UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **OMEGA JEANETTE MOORE, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO:     14-1919** |
| **WAYNE SMITH TRUCKING INC, ET AL** | **SECTION: "R" (4)** |

<u>**ORDER**</u>

Before the Court is Plaintiffs' **Motion to Compel Discovery Responses (R. Doc. 59)**, seeking an order from the Court compelling Defendants Wayne Smith Trucking Inc., Jeffery C. Speilman, and Northland Insurance Corp. to provide full and complete responses to Plaintiffs' Second Set of Interrogatories and Request for Production of Documents. The motion is opposed. *See* R. Doc. 62. The motion was heard by oral argument on Wednesday, September 16, 2015.

**I.     <u>Background</u>**

On June 30, 2014, Plaintiff Omega Moore, individually and as natural tutrix of her minor child, Zeta Ross, filed this action against Defendants, Wayne Smith Trucking Inc., Jeffrey C. Speilman, and Northland Insurance Company in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.  Defendants timely removed the matter to this Court on August 21, 2014. R. Doc. 1-1, p. 2.

This action arises out of a fatal accident that occurred on February 27, 2014, in Gretna, Louisiana, when a tractor-trailer truck, owned by Wayne Smith Trucking, Inc. and driven by Jeffrey C. Speilman, struck Deron Ross as he was riding his motorcycle. *Id.* at 3. Ross died because of the accident. *Id.* In her complaint, Plaintiff alleges that Speilman was driving the truck while in the course and scope of his employment with Wayne Smith Trucking. Plaintiff alleges that Speilman's negligent driving caused Ross's death and Wayne Smith Trucking is

liable for the negligent act of its employee. Plaintiff further alleges that Northland Insurance is also liable as Wayne Smith Trucking's insurer. *Id.*

Plaintiff, individually and as natural tutrix to Zeta Ross, seeks damages for pain and suffering, loss of consortium, mental anguish, lost income and support, punitive[1] and exemplary damages, and any other damages that may be proven at trial.

As to the instant motion, filed on September 1, 2015, Plaintiff propounded its Second Set of Discovery Request on June 23, 2015. R. Doc. 59-2, p. 4. Defendants responded on August 17, 2015. R. Doc. 59-3. Defendants' response included a number of objections. *Id.* In particular, Defendants objected to Plaintiffs' request for production of documents numbers 3 and 4 and interrogatory numbers 1, 2(d), and 4. *Id.* Plaintiffs contend that a Rule 37 telephone conference was held on August 28, 2015. R. Doc. 59-1, p. 2. During the conference, Defendants maintained their objections and Plaintiffs filed the instant motion to compel thereafter. *Id.*

## II. Standard of Review

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1) specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

The Court notes that the discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within

---

[1] Plaintiff's claim for punitive damages was dismissed by the District Court on February 4, 2015. *See* R. Doc. 33.

2

the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(iii).

Rule 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party in its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." However, such materials may be discoverable when either allowed by Rule 26(b)(1), or when a party shows a "substantial need" for the information and that obtaining the information by another means would pose an "undue hardship."

### III. Analysis

#### A. Interrogatory No. 1 and Production of Documents No. 1

Plaintiffs' Interrogatory No. 1 and Request for Production of Documents No. 1 request information on Defendant Speilman's Facebook. R. Doc. 59-1, p. 3.The interrogatory asks whether Defendant Speilman has social media accounts and to provide the username and password to each. R. Doc. 59-2, p. 3. The request for production asks for a downloaded file of his Facebook page. *Id.*

In opposition, Defendant Speilman states that he responded to the request with complete identification of his social media accounts, and objected to the production of his username and password. R. Doc. 62, p. 4. Defendant further objected that information on his Facebook page is not relevant to any issue in the litigation and the request is neither limited in scope nor to a specific period. *Id.* at 5. Moreover, during oral argument, counsel for Defendant Speilman stated that the account was hacked and that Defendant contacted Facebook to request that his account be closed. Defendant subsequently created a new Facebook account in October of 2014. *Id.* at 5.

It is settled that information on social media accounts, including Facebook, is discoverable. *See In re White Tail Oilfield Services, LLC,* No. 11–CV–0009, 2012 WL 4857777 at *2–3 (E.D.La. Oct. 11, 2012) (directing a party to download and produce Facebook information).

However, as with all discovery requests, a Court shall not endorse an extremely broad request. *See* Farley v. Callais & Sons LLC, No. 14-2550, 2015 WL 4730729 (E.D.La. Aug. 10, 2015) (limiting a request for "all Facebook activity" to posting made that refer or relate to the instant accident from the date of the accident to the present). "Ordering [Defendant] to permit access to or produce complete copies of his social networking accounts would permit [Plaintiff] to cast too wide a net and sanction an inquiry into scores of quasi-personal information that would be irrelevant and non-discoverable." *Ogden v. All–Star Career Sch.,* No. 2:13cv406, 2014 WL 1646934, at *1 (W.D. Pa. April 23, 2014) (holding that discovery request seeking complete access to the plaintiff's social networking activity was "far beyond the scope of discovery authorized by Rule 26"). A party is no more entitled to such "unfettered access" to an opponent's social networking communications than it is to "rummage through the desk drawers and closets" in his opponent's home." *Id.*

4

Here, Plaintiffs' request of Defendant Speilman's entire Facebook page is overly board. During oral argument, counsel for Plaintiff conceded so and agreed to limit his request to postings or messages made after and related to the accident. Counsel also conceded that his request was not temporally limited. Counsel agreed to limit his request to four months following the date of the accident, which would be February 27, 2014, through June 27, 2014.

Having determined the scope of Plaintiffs' request, the Court now turns to the method of producing information from Defendant Speilman's Facebook account. In considering this matter, the Court declines to require Defendant to share his log-in or password information with Plaintiffs. Rather, in fashioning a method of production, the Court is guided by the decision in *Giachetto v. Patchogue–Medford Union Free School District*. There, the United States District Court for the Eastern District of New York crafted a method of production that was well-tailored to that case and, in this Court's view, is similarly appropriate in this case. *Giacchetto v. Patchogue–Medford Union Free Sch. Dist.,* 293 F.R.D. 112, 115 (E.D.N.Y. 2013). Adopting that approach here, the Court directs that Defendant Speilman's postings be made available to Defendant's counsel and that they be reviewed by Defendant's counsel – not Defendant himself – to determine whether they fit into one or more of the categories set forth above. *See id.*

Because Defendant's Facebook page was hacked and subsequently closed by Defendant, he shall communicate with Facebook to reestablish it and request entries from February 27, 2014, through June 27, 2014. The postings shall be produced no later than fourteen (14) days from the signing of this Order.

      B.      **Interrogatory No. 2(d)**

Interrogatory No. 2(d) requests discovery relating to Defendants' settlement with the Deron Ross's other children. R. Doc. 59-2, p. 3. Plaintiffs argues that this information is within

5

the sole care and custody of the Defendants; therefore, Plaintiffs cannot obtain it from a source that is more convenient, less burdensome, or less expensive. R. Doc. 59-1, p. 4.

In opposition, Defendants argue that the information sought in irrelevant because the other children are not parties to the instant litigation. *Id.* at 7. Defendants speculate that Plaintiff only seeks to mention the settlement information to establish benchmarks for future settlement negotiations. R. Doc. 62, p. 7.

Discovery of a settlement agreement is only appropriate if it is relevant to the instant litigation. *ABF Capital Mgmt. v. Askin Capital*, No. 96 Civ. 2978(RWS), 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000). "[C]ourts have routinely afforded non-settling defendants access to confidential settlement materials where those defendants have asserted the potential relevance of settlement materials, or information ultimately derived therefrom, to the settling parties' bias, interest, or prejudice." *Id.*

Here, Plaintiffs has failed to articulate, both in their submission and counsel's oral testament to the Court, a reason why previous settlement offers between other parties are relevant to their instant claim. Therefore, Plaintiff's request regarding Interrogatory No. 2(d) is denied.

    C.    **Production of Document No. 4**

Request for Production of Documents No. 4 seeks a copy of Defendant Wayne Smith Trucking, Inc.'s tax returns for 2012, 2013, and 2014. Plaintiffs argue that this information is relevant because their claim greatly exceeds Defendants' available insurance. Thus, Defendants' profit and loss information will allow the Plaintiffs to determine the viability of their excess claims. R. Doc. 59-1, p. 4.

In opposition, Defendants argue that the discovery of this information should only be permitted if a viable punitive damages claim has been asserted. R. Doc. 62, p. 9. Defendants note that Plaintiff's punitive damage claim was dismissed by the District Court. *See* R. Doc. 33. Defendants further notes that Plaintiff has access to post-judgment discovery, if Plaintiffs' judgment exceeds the available insurance coverage limit of 2,000,000. *Id.* at 9.

Court have held that a party must make a factual showing that a viable claim for punitive damages exists before a Court can allow discovery of a party's sensitive financial information. *See E.E.O.C v. Maha Prabhu, Inc.,* No. 3:07–CV–111–RJC–DCK, 2008 WL 4126681, at *4 (W.D.N.C. July 18, 2008) (unpublished) (holding that tax returns are relevant to a punitive damages claim only after a plaintiff makes a prima facie showing that it is entitled to punitive damages); *see also DiNapoli v. Int'l Alliance of Theatrical Stage Employees 8*, No. CIV.A. 09-5924, 2011 WL 1004576, at *7 (E.D. Pa. Mar. 18, 2011) ("If the plaintiff does not claim punitive damages . . . the court will not allow discovery to determine whether the defendant has the means to satisfy a judgment because a defendant's ability to satisfy a judgment has little to do with the subject matter of the litigation notwithstanding a claim for punitive damages."); *Sierrapine v. Refiner Products Mfg., Inc.*, 275 F.R.D. 604, 609 (E.D. Cal. 2011) (stating that "district courts across the country generally do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment – aside from . . . where punitive damages are available"); *United States v. Autumn Ridge Condo. Ass'n, Inc.*, 265 F.R.D. 323, 327 (N.D. Ind. 2009) ("A defendant's financial condition is relevant to the pursuit of punitive damages.").

Here, Plaintiffs' punitive damages claim was dismissed by the District Court. *See* R. Doc. 33. Consequently, any information regarding Defendant Wayne Smith Trucking's profits and losses, including its tax documents, is no longer discoverable. Plaintiff shall not be allowed to

pry into Defendant's sensitive information when such information is irrelevant to any pending claims or issues. Moreover, whether a potential judgment may exceed Defendant's insurance coverage is irrelevant in the current, pre-trial stage of litigation. Therefore, Plaintiff's request regarding Production of Documents No. 4 is denied.

### D.   Interrogatory No. 4.

Interrogatory No. 4 requests statements and notes taken by the insurance adjustor. R. Doc. 59-2, p. 4. As with other requests, Plaintiffs argue that this information is within the sole care and custody of the Defendants; therefore, Plaintiffs cannot obtain it from a source that is more convenient, less burdensome, or less expensive. *Id.*

In their written opposition and during oral argument, Defendants contend that such statements do not exist.

Having found that Defendants responded fully, Plaintiffs' request regarding Interrogatory No. 4 is denied.

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion to Compel Discovery Responses (R. Doc. 59)** is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to Interrogatory No. 1 and Production of Documents No. 1. Defendant is order to communicate with Facebook to reestablish his account and request entries from February 27, 2014, through June 27, 2014. The postings shall be made available to Defendant's counsel and shall be reviewed by Defendant's counsel – not Defendant himself – to determine whether any postings or messages made between February 27, 2014, through June 27, 2014, relate to the accident. The postings shall be produced

no later than fourteen (14) days from the signing of this Order. It is **DENIED** as to Interrogatory Nos. 2(d) and 4, and Production of Documents No. 4.

New Orleans, Louisiana, this 21st day of October 2015.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**